UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MORANDE AUTOMOTIVE GROUP, INC., ET AL. | : | |
| | : | |
| v. | : | Civ. Action No. |
| | : | 3:04 CV 918 (SRU) |
| METROPOLITAN GROUP, INC., ET AL. | : | |

## RULING ON MOTION TO QUASH

On September 19, 2008, Morande Automotive Group, Inc., Morande Automotive Group Employee Stock Ownership Trust, and Morande Ford, Inc. (collectively "Morande" or "the plaintiffs") moved to quash the deposition of Carl Andros. Andros, an attorney, provided various services to Morande in connection with the implementation of an employee stock ownership plan ("ESOP"). Defendants Metropolitan Life Insurance Company, Metlife, Inc., MetLife Group, General American Life Insurance Company, and Genamerica Financial Corporation (the "General American defendants") noticed Andros's deposition on August 25, 2008. They argue that Morande has placed its communications with Andros at issue, thereby waiving the attorney-client privilege, because: (1) Morande has raised claims of, *inter alia*, negligent misrepresentation against the defendants; (2) Morande must prove reliance on those alleged misrepresentations to prove its claims; and (3) communications between Andros and Morande are relevant to the question of Morande's reliance on the defendants' representations. Because Morande does not rely on privileged advice from Andros to make its claim, the plaintiffs' motion to quash (**doc. #175**) is GRANTED.

**I.    Background**

In June 2004, Morande sued the General American defendants, along with Marshall & Stevens Co. a/k/a Marshall & Stevens, Inc. a/k/a Marshall & Stevens ESOP Capital Strategies, Inc. ("Marshall & Stevens") in connection with Morande's attempts to establish and implement an Employee Stock Ownership Plan ("ESOP"). In May 2005, I granted Marshall & Stevens's motion to dismiss. Since that time, General American Life Insurance Company, Genamerica Financial Corporation, and Metlife, Inc. (collectively, "third-party plaintiffs") have filed claims against Marshall & Stevens, Inc., Marshall & Stevens ESOP Capital Strategies, Inc., Roland Attenborough, and Reish Luftman Reicher & Cohen f/k/a Reish & Luftman, PC (collectively, "third-party defendants").

Morande raises claims of negligent misrepresentation, as well as violations of the Connecticut Unfair Trade Practices Act ("CUTPA") and other state statutes, against the General American defendants. The third-party plaintiffs, in their second amended third-party complaint, assert claims for indemnification and contribution from the third-party defendants, alleging negligence and a common obligation to Morande. A description and summary of the factual allegations underlying the various parties' claims follows.

According to Morande's Fourth Amended Complaint, Morande contracted with the General American defendants for services relating to the implementation of an Employee Stock Ownership Plan ("ESOP"). Although the General American defendants made representations to Morande that requisite manufacturer approval to establish the ESOP was easily obtainable, they were ultimately unable to obtain that necessary approval. Morande also alleges that the General American defendants misrepresented the content and results of a "repurchase liability study" upon which Morande relied when deciding how to structure the proposed ESOP.

2

Prior to January 1, 2000, Morande Automotive Group, Inc. ("MAG") owned all the stock of three corporations (all automobile dealerships): Morande Ford, Inc.; M & G Imports, Inc.; and Morande Bros., Inc.  MAG's owners wanted to form a qualified benefit plan, in the form of an ESOP, to distribute shares of MAG to the employees of the Morande car dealerships.

MAG's owners met with David Dill, a licensed insurance salesperson and agent of General American, in St. Louis.  Dill told the MAG ownership that he could help create an ESOP, and introduced the MAG owners to representatives of Marshall & Stevens, whose representatives Dill represented to be experts in obtaining approval for new car franchise dealership ESOPs from franchisers/manufacturers.  Morande, and the third-party plaintiffs, allege that Marshall & Stevens was expert neither in obtaining franchiser/manufacturer approval nor in automobile dealership ESOP implementation.

In Morande's complaint the plaintiffs assert that, relying on representations of Marshall & Stevens's expertise, MAG contracted with Marshall & Stevens for services associated with the "implementation of an Employee Stock Ownership Plan."[1]  However, Marshall & Stevens did not obtain the required franchiser/manufacturer approval.

Eventually Morande, along with another General American client in a similar position, cancelled insurance policies purchased from Dill in conjunction with the ESOPs, and claimed economic damages suffered as a result of General American's alleged negligent misrepresentations.  In federal district court in Arkansas, Dill sued General American for corresponding lost commissions (and punitive damages), asserting a negligent misrepresentation

---

[1] Morande Ford, Inc. – not MAG – was the entity named on the contract with Marshall & Stevens.  Because Morande Ford was named as the contracting party, it is named as a plaintiff in this suit.

3

claim against General American. He prevailed.

Morande's pending motion to quash concerns the deposition of Carl Andros, which was noticed by the General American defendants. Morande retained Andros as part of his attempts to create and implement an ESOP. The record indicates that Andros worked with banks and other entities to effectuate the ESOP and also that he counseled Morande regarding the ESOP-creation process. The General American defendants have asserted that they noticed Andros's deposition in search of evidence in support of their argument that, in light of advice and information Andros communicated to Morande, Morande could not have reasonably relied on the General American defendants' alleged misrepresentations. Morande moves to quash the Andros deposition, arguing that communications between Andros and Morande are protected by the attorney-client privilege.

## II. Discussion

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). The privilege exists to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "[S]ound legal advice or advocacy serves public ends and . . . such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.*; *see also Trammel v. United States*, 445 U.S. 40, 51 (1980) ("The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."); *Fisher v. United States*, 425 U.S. 391, 403 (1976) (recognizing that the purpose of the privilege is "to encourage clients to make full disclosure to their attorneys."). Because the

attorney-client privilege plays such a critical role in the administration of justice, "rules which result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust, should be formulated with caution." *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008).

As a general matter, "[c]ourts have found waiver by implication when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense. . . ." *Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982). For instance, a client's reliance on an attorney's advice as an element of a claim or defense, such as the assertion of a good faith defense to fraud or negligent misrepresentation charges, places otherwise privileged attorney-client communications at issue and implicitly waives the privilege. Because a fact finder would be unable to evaluate the merits of the good faith defense without evidence of what legal advice the defendant relied on – a jury *could not* evaluate the defense *without* the protected information – the privilege must give way. When that individual asserts his good faith defense, he squarely places at issue otherwise protected legal advice, and affirmatively waives the attorney-client privilege.

Here, the General American defendants argue that, by virtue of the plaintiffs' negligent misrepresentation claims, Morande has placed at issue the communications between Morande and Andros and has, accordingly, implicitly waived the protections of the attorney-client privilege. Under Connecticut law, Morande must prove reasonable reliance on the General American defendants' alleged misrepresentations to prove its claims. *See, e.g., Nazami v. Patrons Mut. Ins. Co.*, 280 Conn. 619, 636 (2006) ("an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that

the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result"). Information and advice that Andros communicated to Morande is relevant to the question of whether Morande's reliance on General American's alleged misrepresentations was reasonable. In other words, if Andros warned Morande that manufacturer approval of the proposed ESOP would be difficult or impossible to obtain, despite the General American defendants' representations to the contrary, a jury could find that Morande's reliance on those representations was *un*reasonable in light of Andros's warnings. The question that Morande's motion to quash raises, then, is whether Morande's negligent misrepresentation claims implicitly waive the attorney-client privilege with regard to communications between Andros and Morande because those communications are relevant to the claims.

      Until the Second Circuit recently addressed the scope of the "at issue," or "implied," waiver of the attorney-client privilege in *Erie*, the contours of that waiver were unclear. Prior to *Erie*, the Court of Appeals had primarily cited *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), which imposed a three-pronged test to determine whether a party implicitly waived the attorney-client privilege because he placed otherwise privileged communications at issue. A court applying the *Hearn* test would find implicit waiver when "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Hearn*, 68 F.R.D. at 581. *See, e.g., In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (citing *Hearn*); *United States v. Bilzerian*, 926

6

F.2d 1285, 1292 (2d Cir. 1991) (citing *Hearn*).

Applied broadly, *Hearn* implicates waiver of attorney-client privilege any time that privileged communications are relevant to a claim at issue. "*Hearn* is problematic insofar as there are very few instances in which the *Hearn* factors, taken at face value, do not apply and, therefore, a large majority of claims of privilege would be subject to waiver." *Pereira v. United Jersey Bank*, 1997 WL 773716, at *3 (S.D.N.Y. Dec. 11, 1997). Accordingly, in *Erie*, the Second Circuit recognized that "[c]ourts in our Circuit and others have criticized *Hearn* and have applied its tests unevenly" and clarified "the scope of the at-issue waiver and the circumstances under which it should be applied." *Erie*, 546 F.3d at 227-28.

The *Erie* decision states that: "According to *Hearn*, an assertion of privilege by one who pleads a claim or affirmative defense 'puts the protected information at issue by making it relevant to the case.' But privileged information may be in some sense *relevant* in any lawsuit . . . . We hold that a party must *rely* on privileged advice from his counsel to make his claim or defense." *Id*. at 229 (internal citation omitted). This reasoning is consistent with the reasons, discussed above, that the attorney-client privilege should only be found waived in narrow circumstances, as well as with past Second Circuit decisions applying *Hearn*.

In *In re Grand Jury Proceedings*, 219 F.3d at 179, the Court of Appeals considered whether statements made by a corporate officer and by in-house counsel to a grand jury waived the corporation's privileges because they disclosed privileged communications for exculpatory purposes; in *Bilzerian*, 926 F.2d at 1291, the defendant moved in limine for a ruling permitting him to testify regarding his belief in the lawfulness of certain conduct without being subjected to cross-examination on communications he had with his attorney on that subject. Both cases

7

concerned parties seeking to use the attorney-client privilege as both a sword and a shield, affirmatively relying on privileged information to support a defense while otherwise keeping private attorney-client communications that might have been damaging. Those cases likewise recognize that the parties seeking the protections of the privilege place privileged information squarely at issue, holding that "a party cannot . . . *affirmatively rely* on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party," *In re Grand Jury Proceedings*, 219 F.3d at 182 (emphasis added), and that "the privilege may be implicitly waived when defendant *asserts a claim* that in fairness *requires* examination of protected communications." *Bilzerian*, 926 F.2d at 1292 (emphasis added).

The Connecticut Supreme Court has adopted similar language, writing in *Metropolitan Life Ins. Co. v. Aetna Cas. and Sur. Co.*, 249 Conn. 36, 52-53 (1999), that:

> Because of the important public policy considerations that necessitated the creation of the attorney-client privilege, the "at issue," or implied waiver, exception is invoked only when the contents of the legal advice is *integral* to the outcome of the legal claims of the action. Such is the case when a party specifically pleads reliance on an attorney's advice *as an element of a claim or defense*, voluntarily testifies regarding portions of the attorney-client communication, or specifically places at issue, in some other manner, the attorney-client relationship. In those instances the party has waived the right to confidentiality by placing the content of the attorney's advice directly at issue because the issue *cannot be determined* without an examination of that advice. If the information is actually *required* for a truthful resolution of the issue . . . which the party has raised . . . the party must either waive the attorney-client privilege as to that information or it should be prevented from using the privileged information to establish the elements of the case.

(Emphasis added) (internal footnotes, citation and quotation marks omitted). Here, Morande's negligent misrepresentation claims do not depend on Morande's reliance on privileged advice from Andros. Morande must prove reliance on the defendants' alleged misrepresentations.

8

Although privileged communications between Andros and Morande are relevant to the negligent misrepresentation question, Morande's reliance on Andros's counsel is not a question upon which the negligent misrepresentation claims depend. "There must be 'some showing by the party arguing for a waiver that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a claim or defense.'" *Weiss v. National Westiminister Bank, PLC*, 2008 WL 5115027, at *2 (E.D.N.Y. Dec. 3, 2008) (quoting *Erie*, 546 F.2d at 228).

Although it would be helpful for the General American defendants to know what advice Andros gave Morande, because it would be relevant to whether Morande reasonably relied on the General American defendants' representations, Morande has not placed that advice at issue. When the plaintiffs asserted negligent misrepresentation claims against the General American defendants, they raised the question of Morande's reliance on the General American defendants, *not* the question of Morande's reliance on Andros's advice. Knowing Andros's advice would ostensibly make the General American defendants' defense case an easier one, but that advice is neither integral to nor necessary for the resolution of Morande's negligent misrepresentation claims.

**III.    Conclusion**

Morande's negligent misrepresentation claims do not rely on communications between Andros and Morande. Accordingly, Morande has not implicitly waived the attorney-client privilege by placing those communications at issue. Because a fact finder can consider Morande's claims without the privileged communications, Morande's motion to quash (**doc. #175**) is GRANTED. Nothing in this ruling should be construed as limiting discovery from Andros of documents or information not protected by the attorney-client privilege.

It is so ordered.

Dated at Bridgeport this 12th day of March 2009.

                                                  /s/ Stefan R. Underhill
                                                  Stefan R. Underhill
                                                  United States District Judge